Gale GODSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–210–CR.

Court of Appeals of Texas, Waco.

April 28, 1999.

---

Jim Claunch, The Claunch Law Firm, Fort Worth, for appellant.

Paula C. Juba, Atty. Gen. Office M.F.C.U., Austin, Bill J. Moore, County Atty., Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE Justice

Gale Godsey, a registered nurse, appeals from a conviction for a Class A misdemeanor arising from an incident in a nursing home. *See* TEX. PEN.CODE ANN. § 22.01(a)(3), (c) (Vernon 1994 & Supp.1999). She was sentenced to 180 days in jail, probated for one year with a requirement of 80 hours of com-

munity service. Godsey appeals on seventeen points of error, complaining of the sufficiency of the evidence, double jeopardy and prosecutorial vindictiveness, improper admission of evidence, and improper jury argument. Finding no error that affects the outcome, we will affirm the judgment.

## BACKGROUND

Godsey was the director of nursing at the Cleburne Health Care Center on September 28, 1995. She had been with the center for approximately two weeks. Kathryn Linkenhoger was a 91–year–old, 100–pound, wheelchair-bound patient who suffered from Alzheimer's Disease. The parties agree that Linkenhoger was a difficult patient with a history of assaultive, aggressive behavior.

On that day, two nurses aides were bathing Linkenhoger and returning her to her room. The parties dispute the later events. The aides, Harvey Reyna and Amy Castillo, testified that Godsey entered the room without being asked. She restrained Linkenhoger's arms by grabbing her wrists. When Linkenhoger got a hand free, Godsey "slammed it down." Linkenhoger said, "Stop it, you're hurting me" and spit in Godsey's face. Godsey wiped the spit off her face and wiped it down Linkenhoger's face, stating, "If you spit in my face, I'm going to spit in yours."

Godsey's version of the events differs sharply. She testified that Reyna requested her assistance. She restrained Linkenhoger by cupping her hands over Linkenhoger's wrists without putting pressure on them. Godsey testified that her actions were to protect herself and the aides. When Linkenhoger spit in her face, she wiped the spit on the patient's gown as a reflex action, saying, "Now Miss Kathryn, that isn't very nice. You wouldn't like it if someone spit at you, would you?"

Denise Deapen, the nursing home administrator, heard about the incident that afternoon. She interviewed Reyna, Castillo, Godsey, and Mary Braswell, the assistant director of nursing who had spoken to Godsey about the incident. Deapen asked each to file a written report about the occurrence.

Deapen reported the event to the nursing home's parent company, which asked for Godsey's resignation.

The nursing home then reported the incident to the Texas Department of Human Services. The Attorney General's Office investigated the incident and, after negotiating with Godsey's attorney, filed Class C misdemeanor charges in the justice court. Godsey entered a plea of nolo contendere on April 30, 1996, in exchange for deferred adjudication and a $350 fine. In July, Godsey was advised that her plea to the Class C misdemeanor would prevent her from working as a Medicare/Medicaid provider. She filed a writ of habeas corpus in the Johnson County District Court to set aside the plea on, among other grounds, ineffective assistance of counsel. The court granted the writ in October, vacating the conviction. In January 1997, the State dismissed the Class C proceeding in the justice court and refiled as a Class A misdemeanor in the County Court. A jury convicted Godsey, and the court assessed punishment. Linkenhoger had died prior to the trial.

## THE EVIDENCE

Because Godsey raises both legal and factual sufficiency points, we will first set out the testimony of the witnesses:

### Amy Martin Castillo

Amy Castillo, a certified nursing assistant, testified that she was in Linkenhoger's room changing the bed while Harvey Reyna showered the patient. She and Reyna were trying to dress Linkenhoger, who was attempting to pinch and hit them. Godsey came into the room and grabbed Linkenhoger's hands and slammed them into her lap. Linkenhoger told Godsey she was hurting her. When Linkenhoger spit in Godsey's face, Godsey wiped it back in Linkenhoger's face saying in an angry voice, "If you spit in my face, I'm going to wipe it back in yours." Castillo testified that her own method of dealing with a difficult patient was to take a "time out." She stated that Linkenhoger was not in danger of hurting herself.

Castillo testified that Denise Deapen, the nursing home administrator, called her into her office around 1 p.m. that afternoon. She stated that she had not reported Godsey's actions immediately after the incident. She said, "[Godsey] was the Director of Nursing. I would lose my job if—if nothing was done about it." Castillo stated that she had no hard feelings towards Godsey, and did not "have it in" for Godsey because of her dealings with the staff.

### Harvey Reyna

Harvey Reyna, a certified nursing assistant, testified that he was returning Linkenhoger to her room from the shower room. Linkenhoger was "being herself," kicking and pinching when anyone tried to bathe or change her. Reyna testified that, although he had not requested help, Godsey followed him into the room. Linkenhoger reached out, and Godsey grabbed her wrists and put them on the armrests. When Linkenhoger again reached out, Godsey grabbed her wrists and slammed them down into her lap, saying "Look, lady, I'm faster than you." Linkenhoger said, "You're hurting me" and Godsey replied, "Excuse me." When Linkenhoger spit in her face, Godsey wiped it off and rubbed it in Linkenhoger's face from forehead to chin saying, "If you spit in my face, I'll rub it back in yours."

Reyna testified that although Linkenhoger had pinched and spit at him many times, he had not gotten angry. When she had spit on him, he had gone into the bathroom and washed his face. When she had pinched, he had jerked away and left the room. Reyna testified that he was not in physical danger from Linkenhoger.

### Mary Braswell

Mary Braswell, assistant director of nursing, testified that she had been pinched by Linkenhoger many times. She reacted by telling Linkenhoger that it was not nice to pinch. Braswell testified that Godsey told her that Linkenhoger had pinched her and showed her the red mark on her arm. During this conversation, Godsey demonstrated how she had wiped Linkenhoger's spit back into her face. Godsey stated, "I'm going to break her of that habit one way or the other."

### Denise Deapen

Denise Deapen, administrator of the nursing home, testified that she had hired Godsey to be the director of nursing because she was well-qualified and experienced. She stated that Godsey was doing a good job, was working well with the staff, and was dependable. When Deapen learned of the incident, she spoke with Reyna, Castillo, Braswell, and Godsey. She asked each for a written statement. Godsey told her that she had wiped the spit onto Linkenhoger's face. Deapen's written statement says that Godsey said she wiped it on Linkenhoger's shoulder. When Deapen asked why she had done it, Godsey told her, "I was trying to teach her to stop spitting on people."

### Margaret Williams

Margaret Williams, a registered nurse, testified as an expert on geriatric psychiatric problems. Williams testified about proper nursing care of Alzheimer's and dementia patients. She testified that Godsey's intervention with Linkenhoger was unacceptable and inappropriate.

### Pat Linkenhoger

Pat Linkenhoger, son of Kathryn Linkenhoger, testified that around the time of the incident his mother recognized him and his wife pretty consistently.

### Dr. Margaret Basiliadis

Dr. Margaret Basiliadis, a doctor of osteopathy and a geriatrician, testified for the defense without being subpoenaed or being paid. Basiliadis worked with Godsey at another nursing home and found her to be professional and one of the best nurses with whom she had worked. Given a hypothetical situation of a patient spitting on a nurse, Basiliadis testified that wiping the spit on a patient's gown is reasonable and proper. She also testified that restraining such a patient above the wrist is the best method. She stated that the transfer of bodily fluids, such as saliva, can be dangerous and that health care givers are not obligated to tolerate physical danger to themselves.

Basiliadis agreed that rubbing spit back into a patient's face to teach a lesson would not be appropriate nursing intervention. She was unaware that two witnesses had testified that Godsey had wiped the spit into Linkenhoger's face.

### Gale Godsey

Godsey testified that she had been a registered nurse since 1988. Prior to that she had been a police dispatcher and reserve officer. The Cleburne Health Care Center hired her as director of nursing on September 18, 1995, to take a "firm leadership role." She called a staff meeting on September 25 to talk about problems with absenteeism and tardiness. She told the staff that the strict policies of the Center would be followed to the letter.

Prior to this incident, Godsey had heard Linkenhoger "yelling and screaming" in the shower room and observed her "biting and kicking and scratching." She offered help to the aides, but "they said, no, this was a normal procedure for [Linkenhoger]." Godsey returned to her office and read Linkenhoger's file.

On the morning of September 28, Reyna asked Godsey for her assistance. They went to Linkenhoger's room where the patient was striking out at Castillo. Godsey "took hold" of Linkenhoger's hands so that they could transfer her from the shower chair to the wheelchair. She released her wrists once the transfer was made, but Linkenhoger started "flailing and fighting and spitting." Godsey cupped her hands around Linkenhoger's wrists as Linkenhoger continued kicking and spitting. Godsey dodged the spit several times until Linkenhoger spit in her face. By "purely an instinctive reaction," Godsey wiped the spit from her face onto Linkenhoger's gown on the left shoulder, saying, "Miss Kathryn, you shouldn't spit on people, it's not nice and you wouldn't like it if somebody spit in your face."

When asked whether Linkenhoger said anything, Godsey responded, "No ... [s]he was yelling, and there was no words said, per se, it was just a yell, like an Alzheimer's or dementia patient does." Godsey noticed that the shower chair had feces on it, and she asked Reyna whether Linkenhoger had been cleaned up after a bowel movement. Reyna

answered that he did not think so.[1] Godsey asked him to bring a towel, and she and Castillo stood Linkenhoger up while Reyna cleaned her. She returned to her office.

Godsey testified that it is possible for patients to injure themselves or staff members and that she was trying to keep Linkenhoger from hurting herself or someone else. She denied telling anyone that she had been trying to teach Linkenhoger a lesson. She said that she denied that she had wiped the spit in Linkenhoger's face when Deapen asked her about the incident. The next day Deapen informed her that the corporate office believed that the Department of Human Services had to be contacted. Deapen gave Godsey the option to resign or be fired, and Godsey resigned.

## SUFFICIENCY POINTS

Points one through three[2] assert that the court erred in failing to grant a directed verdict at the conclusion of trial because there was no evidence to rebut her affirmative defenses of self-defense, defense of others, and reasonable discipline on behalf of the nursing home. Point four asserts that the court erred in failing to grant Godsey's motion to dismiss at the conclusion of the State's presentation because there was no evidence that Linkenhoger would regard the contact as offensive or provocative. Point twelve asserts that the trial court erred in failing to direct a verdict for the same reason. Point seventeen asserts that the evidence is factually insufficient to support the jury's verdict.

Points one through four and twelve are "no evidence" complaints about the court's failure to grant a directed verdict or motion to dismiss. A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the legal sufficiency of the evidence to support the conviction. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990). In reviewing the legal sufficiency of the evidence, we consider the

evidence in the light most favorable to the verdict. *Id.*

Point seventeen asserts factual insufficiency, whereby the reviewing court considers all the evidence "without the prism of 'in the light most favorable to the verdict'" and determines whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

THE STATUTES

Godsey was convicted of assault, which is defined by statute:

(a) A person commits an offense if the person:

. . .

(3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

. . .

(c) An offense under Subsection (a)(2) or (3) is a Class C misdemeanor, except that an offense under Subsection (a)(3) is a Class A misdemeanor if the offense was committed against an elderly individual or disabled individual, as those terms are defined by Section 22.04.

TEX. PEN.CODE ANN. § 22.01. Section 22.04 defines an elderly individual as one who is 65 years of age or older. *Id.* § 22.04(c)(2) (Vernon 1994).

■ Godsey asserted, and the court charged the jury on, three defenses to the assault charge: self-defense, defense of others, and responsibility for an incompetent person. *Id.* §§ 9.31, 9.33, 9.63 (Vernon 1994 & Supp.1999). The jury found Godsey guilty of "assault on an elderly individual by physical contact that was offensive or provocative."

---

**1.** Reyna had testified that Linkenhoger had not had a bowel movement and was "clean because I had just brought her out of the shower."

**2.** Godsey brings "points of error" rather than "issues." *See* TEX.R.APP. P. 38.1(e). Both issues and points cover every subsidiary question fairly included. *Id.*

■ The first three points concern defenses which, if raised by the evidence, the State had the burden of persuasion to disprove. *See Saxton v. State,* 804 S.W.2d 910, 912 n. 5, 914 (Tex.Crim.App.1991). In resolving the legal sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's defensive testimony, but rather we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of assault beyond a reasonable doubt and also could have found against appellant on the defensive issue beyond a reasonable doubt. *Id.* at 914.

Self-defense is available when "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN.CODE ANN. § 9.31. A person is justified in using force against another to protect a third person if (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified in using force to protect himself, and (2) the actor reasonably believes his intervention is immediately necessary to protect the third person. *Id.* § 9.33. The use of force against a mental incompetent is justified if (1) the actor is the incompetent's guardian or someone similarly responsible for the incompetent's care and supervision, and (2) when and to the degree the actor reasonably believes the force is necessary (a) to safeguard and promote the incompetent's welfare or (b) if the incompetent is in an institution for his care and custody, to maintain discipline in the institution. *Id.* § 9.63.

We examine the evidence in the light most favorable to the verdict. Reyna and Castillo testified that Linkenhoger stated, "You're hurting me," that Godsey wiped the spit into Linkenhoger's face, and that Godsey said, "If you spit in my face, I'll rub it back in yours." The nurses aides also testified that neither they nor Linkenhoger were in physical danger. Braswell testified that Godsey demonstrated how she had wiped the spit in Linkenhoger's face and how she was going to break Linkenhoger of the habit. Deapen testified that Godsey initially told her she had rubbed the spit in Linkenhoger's face. Dr. Basiliadis testified that rubbing spit into a patient's face would not be appropriate nursing intervention.

We find the evidence legally sufficient to support the verdict, and thus we overrule points one through four and twelve, which are "no evidence" contentions relating to the court's denial of Godsey's motions for directed verdicts.[3] *Madden,* 799 S.W.2d at 686.

In reviewing the factual sufficiency of the evidence, we look to all the evidence to determine whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Clewis,* 922 S.W.2d at 132. Godsey's testimony as to the manner in which she restrained Linkenhoger differs from that of the aides. Likewise, she testified that Linkenhoger was yelling but did not say anything, but the aides testified that she stated, "You're hurting me." Godsey contradicted the aides' testimony that she wiped the spit into Linkenhoger's face and contradicted Braswell's and Deapen's testimony that she did it to teach Linkenhoger a lesson or to break her of the habit. The essence of Dr. Basiliadis' testimony was that, if Godsey's version of the events is correct, she acted appropriately. However, if the aides' version is correct, Godsey's actions were inappropriate. Williams testified that, based on the aides' version of events, Godsey's actions were inappropriate.

The jury heard the evidence and apparently believed the aides. We do not find that its decision is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* We overrule point seventeen.

## EXPERT WITNESS

■ Godsey's fifth point questions the court's allowing Margaret Williams to testify

---

3. Point four complains that the court erred in denying a motion to dismiss at the conclusion of the evidence because there was no evidence to show that Linkenhoger would regard the contact as offensive or provocative. Twelve complains that the court erred in denying a directed verdict for the same reasons at the end of the State's presentation. Both are "no evidence" reviews.

as an expert witness. Rule 702 of the Rules of Evidence,[4] which governs the admission of expert testimony, provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX.R. EVID. 702. It is identical to Federal Rule 702. Rule 702 applies not only to testimony based on "scientific" knowledge but also to testimony based on "technical" and "other specialized" knowledge. *Fowler v. State*, 958 S.W.2d 853, 860 (Tex.App.—Waco 1997), *aff'd*, 991 S.W.2d 258, (Tex.Crim.App. 1999); *Kumho Tire Co. Ltd. v. Carmichael*, —— U.S. ——, 119 S.Ct. 1167, —— L.Ed.2d —— (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

This rule contains three requirements for the admission of expert testimony: (1) the witness must be qualified; (2) the proposed opinion testimony must be grounded in "scientific, technical, or other specialized knowledge"; and (3) the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Fowler*, 958 S.W.2d at 860; *E.I du Pont de Nemours and Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The Court of Criminal Appeals has held that testimony regarding scientific evidence offered under Rule 702 of the Rules of Evidence must be relevant and reliable. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim.App.1992).

■ The threshold determination for a trial court regarding the admission of expert testimony based on "scientific knowledge" is whether that testimony will help the trier of fact understand the evidence or determine a fact in issue. *Fowler*, 958 S.W.2d at 860. Once it is determined that the proffered evidence will assist the trier of fact, the trial court must determine whether the testimony is relevant. *Id.* To be relevant, the proposed testimony must be "sufficiently tied to the facts of the case that it will assist the trier of fact in resolving a factual dispute." *Id.* at 860–61. Next, the trial court must establish that the evidence is sufficiently reliable to help the jury in reaching accurate results. *Id.* at 861. The proponent of scientific evidence has the burden of proving its relevancy as well as the scientific reliability by clear and convincing evidence. *Id.* If the judge determines that the testimony is both relevant and reliable, he must then determine whether its probative value is outweighed by the "danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id.* (citing *Robinson*, 923 S.W.2d at 557).

Outside the jury's presence, Williams testified about her educational and work experience. She had been a registered nurse for thirty-eight years, had a master's degree in nursing and "advanced preparation" in psychiatric nursing, had taught at several colleges, was a nurse's aide examiner for the Texas Department of Human Resources, and had written protocols for nurse's aide training. Williams testified that she had been a clinical nurse specialist in psychiatric nursing for eleven years. She described her work experience with geriatric psychiatric patients. Williams testified that she had special expertise in patients with Alzheimer's or senile dementia.

Williams identified *Clinical Gerontological Nursing: A Guide to Advanced Practice* and *Caring for the Elderly* as books that are widely accepted as authoritative with accepted theories of nursing. Williams discussed various methods of dealing with Alzheimer's patients, including "mirroring" and "validation." Godsey cross-examined Williams on the fact that she was not a physician, could not write prescriptions, could not prescribe medical treatment, and had never seen Linkenhoger.

During the hearing outside the jury's presence, the court and attorneys specifically discussed the requirements of Rule 702. Godsey objected that Williams was not a doctor and her testimony about the conditions and

---

4. Formerly the Rules of Criminal Evidence.

cause of Alzheimer's would not be helpful to the jury. The State responded that it sought to qualify Williams as an expert on proper nursing care. The court determined that Williams was qualified to testify as a nursing expert about the standard of nursing care, *i.e.*, what a nurse should or should not do with an Alzheimer's or dementia patient, and about the stages of Alzheimer's and dementia. Godsey objected that the State should not ask Williams specifically about whether Linkenhoger had the mental capacity to regard the conduct as offensive. The court sustained the objection. The State agreed not to ask specific questions relating to Linkenhoger's state of mind but rather to ask questions about Alzheimer's patients in general.

Williams testified before the jury as to her qualifications and about various nursing techniques. Referring to the nursing textbooks, she explained that Alzheimer's patients pass through certain stages in which they misinterpret and overreact to stimuli. Williams testified that Alzheimer's patients experience varying amounts of recall. She stated that a patient's inability to remember certain things does not mean that he or she is unable to appreciate fear or pain, and that the patient might be able to tell someone, "I'm hurting" or "I don't like you," although he or she might not remember five minutes later what was said. Williams testified that "behavior modification" is a system in which you try to change someone's behavior by rewarding good conduct and letting the person accept the consequences of bad conduct. She testified that behavior modification is not a good method of dealing with Alzheimer's patients. She stated that Godsey's intervention was unacceptable and inappropriate.

We review to determine whether the trial court's decision to admit Williams' testimony was "within the zone of reasonable disagreement" given the evidence presented at the hearing outside the jury's presence and given the requirements of Rule 702. *See Kelly*, 824 S.W.2d at 574. Williams testified about her nursing qualifications and experience and about nursing techniques for dementia patients. She testified that these nursing standards were generally accepted. The court

and attorneys discussed the requirements of Rule 702, and the court determined that the case was "about a nursing situation" and that Williams was an "expert nurse." We do not find that the court abused its discretion in its determination. *Id.* We overrule point five.

## EXHIBITS

■ In point six, Godsey complains that the court erred in admitting portions of the textbooks into evidence. State's Exhibits Nos. 19 and 20 are the title pages and excerpts from two nursing textbooks: *Clinical Gerontological Nursing: A Guide to Advanced Practice* (No. 19) and *Caring for the Elderly* (No. 20). Godsey objected on hearsay grounds and that the authors were not licenced doctors. The court admitted the exhibits and instructed the jury that the books were not written by doctors.

Williams was asked to summarize a portion of Exhibit No. 19 regarding assaultive behavior in Alzheimer's patients. Godsey objected that the book was in evidence and that she would rather the jury read the text than have Williams give a summary. The State agreed to "rephrase the question" and asked Williams to read from the text. Williams then read a brief portion explaining the reasons for assaultive behavior, including: paranoid thinking, misperception, low frustration tolerance, and an inability to communicate. Williams also testified about the use of restraints with the elderly. On cross-examination, Godsey questioned Williams on why she had not offered Chapter 16, "Physical Restraint of the Elderly," into evidence. Williams stated that she would be happy to offer the chapter, and the State later offered Chapter 16 without objection.

The Rules of Evidence provide:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

■ (18) **Learned Treatises.** To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination, statements contained in published treatis-

es, periodicals, or pamphlets on a subject of history, medicine, or other science or art established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. *If admitted, the statements may be read into evidence but may not be received as exhibits.*

TEX.R. EVID. 803(18) (emphasis added). A learned treatise is only admissible in conjunction with testimony by an expert witness. *Id.; Loven v. State,* 831 S.W.2d 387, 395 (Tex.App.—Amarillo 1992, no pet.). Thus, the risk that a treatise might be misunderstood and misapplied by the jury is avoided because an expert is on the stand and available to explain and assist in the application of the treatise. *Loven,* 831 S.W.2d at 395. Disallowing the admission of the treatise itself "prevent[s] a jury from rifling through a learned treatise and drawing improper inferences from technical language it might not be able properly to understand without expert guidance." *Id.* (citing *Tart v. McGann,* 697 F.2d 75, 78–79 n. 2 (2d Cir.1982)) (quoting *United States v. Mangan,* 575 F.2d 32, 48 n. 19 (2d Cir.1978))).

Assuming Godsey's general "hearsay" objection preserved her complaint, the court erred in allowing portions of the books into evidence as unrestricted exhibits. TEX.R. EVID. 803(18). Because the error is not of constitutional dimension, we must disregard it unless it affected a substantial right. TEX. R.APP. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 416 (Tex.Crim.App.1998) (erroneous admission of hearsay statements reviewed as non-constitutional error). When we assess harm under Rule 44.2(b) flowing from non-constitutional error, we review the entire record to determine whether the error had more than a slight influence on the verdict. *Fowler v. State,* 958 S.W.2d 853, 866 (Tex.App.—Waco 1997), *aff'd,* 991 S.W.2d 258, (Tex.Crim.App. 1999). If we find that it did, we must conclude that the error affected the defendant's rights in such a way as to require a new trial. *Id.* If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

■ Over objection, the court allowed as exhibits two chapters from the learned treatises. It allowed another chapter as an exhibit without objection. The substance of the text of the exhibits is substantially the same as Williams' testimony. Thus, the jury was limited to those chapters and did not have the opportunity to go "rifling through a learned treatise and drawing improper inferences from technical language" as it might have if the entire text had been in evidence. *Loven,* 831 S.W.2d at 395. Under these circumstances, we do not find harm flowing from the exhibits. We overrule point six.

## WITNESS' STATEMENT

■ Point seven complains that the court erred in admitting State's Exhibit No. 9, the signed statement of Mary Braswell which had been prepared by an investigator for the attorney general's office. Braswell gave a handwritten statement on September 29, 1995, which was admitted without objection as State's Exhibit No. 8. Exhibit No. 9 was a second statement by Braswell dated January 11, 1996. Exhibit No. 9 had been reduced to writing by Cheryl Petty, an investigator for the AG's office.

When Braswell was shown Exhibit No. 9, she stated that the last portion of the statement was not in her words. She stated that Petty had asked her, "Would you want your mother to be treated like that?" and she had responded, "No." Petty then asked, "Could you believe what had happened?" to which she responded, "No." The written statement made Petty's questions appear to be direct statements by Braswell.

The court sustained Godsey's objection that the statement was not in Braswell's words. The State responded that the two sentences should be redacted with a black marker and the jury should receive the majority of the statement. The court agreed, and the two offensive sentences were removed.

■ Godsey argues on appeal that Exhibit No. 9 should not have been admitted be-

cause the statement was not Braswell's.[5] The court redacted the two sentences which Braswell had testified were not in her words. The remaining portion of the statement was in Braswell's words. Furthermore, the remaining portion of the statement was substantially the same as Exhibit No. 8, which had already been admitted without objection. A court's action in improperly "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App.1998). Thus, even if the court's ruling was error, the court's action would have been "rendered harmless" by the admission of similar evidence without objection. *Id.* nn. 6–8. We overrule point seven.

## MORE EXHIBITS

■ In point eight, Godsey complains that the court erred in admitting State's Exhibits Nos. 3 and 7. The exhibits were acknowledgments signed by Castillo (No. 3) and Reyna (No. 7) when they were hired by the nursing home. The acknowledgments state that under Senate Bill 9, an employee who is guilty of patient neglect or abuse or who knowingly fails to report such neglect or abuse may face criminal charges.

During Castillo's testimony, Godsey objected to Exhibit No. 3 on the grounds that the acknowledgment was not relevant because the controlling question was whether she had done something wrong, not what Castillo had or had not done. She also objected that the statement was a "matter of law" on which the judge should instruct the jury. The court overruled the objections. During Reyna's later testimony, Godsey objected to Exhibit No. 7 on the grounds that it was a "matter of law."

On appeal, Godsey argues that the admission of the exhibits violates Rule of Evidence 402. Tex.R. Evid. 402. The State responds that the statements were not introduced as

accurate statements of the law, but rather to rebut the inference that Castillo and Reyna had reported the assault because of ill feelings towards Godsey. The crux of Godsey's complaint is that the State improperly bolstered the aides' credibility with their acknowledgments. *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex.Crim.App.1993) (although objection at trial was to relevancy, the Court considered defendant's "bolstering" complaint on appeal "in the interest of justice"). Bolstering occurs when a party uses an item of evidence to add credence or weight to some earlier unimpeached evidence which that party offered. *Id.* Improperly admitted bolstering evidence does not necessarily call for reversal, but is subject to a harmless error analysis. *Id.*

Godsey did not lodge a relevancy or bolstering objection against Reyna's acknowledgment, and thus her complaint as to that exhibit is waived.[6] *Cook v. State*, 858 S.W.2d 467, 474 (Tex.Crim.App.1993). Castillo's acknowledgment was admitted during her direct testimony before Godsey had challenged Castillo's credibility on the basis of possible bias. Assuming the objection was adequate to preserve a complaint about improper bolstering, the admission of Exhibit No. 3 was premature and constituted improper bolstering. *Rousseau*, 855 S.W.2d at 681.

■ We next look to the question of harm. *Id.*; Tex.R.App. P. 44.2(b). In her opening statement, Godsey alluded to the fact that during her first 10 days on the job she had called a staff meeting, which the aides had attended, to discuss absenteeism and tardiness. During Castillo's direct examination, she was asked why she had not immediately reported the incident to the administrator. She replied, "[Godsey] was the Director of Nursing. I would lose my job if—if nothing was done about it." Castillo stated that she had no hard feelings toward Godsey and did not "have it in" for Godsey because of her dealings with the staff. The State then sought to introduce, and the court

---

5. Godsey also cites Rule of Evidence 801(e) regarding prior consistent statements. Tex.R. Evid. 801(e)(1)(B). She did not raise this objection in the trial court. When the complaint on appeal differs from that made at trial, the complaint is

waived. *Cook v. State*, 858 S.W.2d 467, 474 (Tex.Crim.App.1993).

6. Mary Braswell's acknowledgment was also admitted without a relevancy objection.

484

admitted, Exhibit No. 3, Castillo's acknowledgment. On cross-examination, Godsey questioned Castillo about the staff meetings she had called concerning absenteeism and tardiness. Furthermore, similar acknowledgments signed by Reyna and Braswell were later admitted.

We do not find harm in the premature admission of Castillo's acknowledgment. *Rousseau,* 855 S.W.2d at 681; TEX.R.APP. P. 44.2(b). We overrule point eight.

## DOUBLE JEOPARDY & PROSECUTORIAL VINDICTIVENESS

In points nine and ten, Godsey complains that the court erred in overruling her motion to dismiss based on the grounds of double jeopardy and prosecutorial vindictiveness. She filed her motion prior to trial, and the court conducted a hearing.

### DOUBLE JEOPARDY

Godsey attacked her original justice court conviction by writ of habeas corpus in the district court, alleging ineffective assistance of counsel and failure to obtain a jury waiver. The district court granted the writ, declared the judgment "void," set aside the plea and judgment of conviction, and ordered that Godsey be returned to the justice court to answer the complaint.

In *Windom v. State,* 968 S.W.2d 360 (Tex. Crim.App.1998), the defendant was indicted for aggravated robbery. Pursuant to a plea agreement, he plead no contest to the reduced charge of robbery and was sentenced to 40 years' imprisonment. *Id.* at 361. Later that day, the trial court granted Windom's motion for new trial. Shortly thereafter, he was tried for aggravated robbery, convicted of the lesser offense of robbery, and sentenced to life imprisonment. *Id.* Windom appealed, contending that the Double Jeopardy Clause barred his subsequent prosecution for aggravated robbery.

The Court of Criminal Appeals analyzed the situation as one in which both the defendant and the State exchanged benefits to obtain a plea bargain: the State agreed to reduce the charge from aggravated robbery to robbery in exchange for Windom's plea of no contest. *Id.* at 363. "When the trial judge granted appellant's motion for new trial, that agreement was voided.... [I]f appellant withdraws his negotiated plea, the remedy is to return the parties to their original position." *Id.* Thus, the Court held that the subsequent prosecution for aggravated robbery was not barred by the jeopardy provisions of article 37.14 of the Code of Criminal Procedure. *Id.;* TEX.CODE CRIM. PROC. ANN. art. 37.14 (Vernon 1981).

A void judgment of conviction does not bar a successive prosecution under the principles of double jeopardy.[7] *Hoang v. State,* 872 S.W.2d 694, 698 (Tex.Crim.App. 1993) (defendant successfully challenged conviction by writ of habeas corpus based on failure of juvenile court to relinquish jurisdiction to convicting court). Godsey's successful habeas proceeding was not a judgment of acquittal, and thus the principles of double jeopardy do not bar her subsequent prosecution. *See id.* We overrule point nine.

### VINDICTIVE PROSECUTION

Godsey argues that the State could not legally charge her with the more serious Class A misdemeanor after she successfully had her Class C conviction set aside. Generally, the State is prohibited from increasing the severity of the charges against a defendant who has exercised a constitutional right to appeal a conviction. *Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974). A person convicted of an offense is entitled to pursue the right to appeal "without apprehension that the State will retaliate by substituting a more serious charge for the original one." *See id.* An exception exists if the charge is increased in the context of plea negotiations. *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). In that instance, a prosecutor may threaten to

7. A void judgment of conviction differs from a void judgment of acquittal. *Hoang v. State,* 872 S.W.2d 694, 698 n. 5 (Tex.Crim.App.1993). For example, where a defendant had been acquitted of larceny in his first trial but convicted of burglary, double jeopardy barred a retrial on larceny after the burglary conviction had been set aside on appeal. *Benton v. Maryland,* 395 U.S. 784, 796–97, 89 S.Ct. 2056, 2064, 23 L.Ed.2d 707 (1969).

re-indict a defendant on more serious charges if the defendant insists on going to trial. *Id.*

■ At the pre-trial hearing, the prosecutor stated that the State had plea-bargained with Godsey and had filed the case as a Class C misdemeanor in return for her agreement to plead nolo contendere. The prosecutor stated, "The State agreed to file a C even though the offense constituted an A misdemeanor in exchange for Miss Godsey's promise that she would enter a plea of nolo contendere. She did so." After Godsey succeeded in having the conviction voided, the parties were returned to their original positions.

■ The question presented is not unlike that in cases where a conviction has been overturned on appeal. "[T]he Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'" *Blackledge,* 417 U.S. at 27, 94 S.Ct. at 2102. "The decision as to whether prosecutorial vindictiveness exists must be decided on a case by case basis, based on each individual record." *Lopez v. State,* 928 S.W.2d 528, 533 (Tex.Crim. App.1996). Thus, where a conviction on a guilty plea is reversed on appeal and the State adds enhancement allegations on retrial, the constitutionality of the increased punishment so obtained turns on whether the prosecutor's acts may have been the product of vindictive retaliation for the prior exercise of the accused's right to appeal. *Bouie v. State,* 565 S.W.2d 543, 545 (Tex.Crim.App. 1978). If a defendant withdraws on retrial from a plea bargain negotiated at the first trial, an increased punishment would be a legitimate response of the State to the defendant's rejection of that agreement. *Id.* at 546.

Attached to the State's response to the motion was the prosecutor's affidavit setting forth the reasons for refiling the case as a Class A misdemeanor: (1) the seriousness of the offense, nature of the victim, and defendant's actions prior to the offensive touching justified filing the case as a Class A misdemeanor; (2) the offense was originally charged as a Class C misdemeanor pursuant to a plea agreement negotiated with Godsey's former counsel; (3) after Godsey repudiated the plea by challenging its voluntariness, the case was filed as a Class A to provide a formal record; and (4) there was no intent to punish or retaliate against Godsey for exercising her constitutional rights.

The charge of prosecutorial vindictiveness was throughly briefed and argued to the trial court. The court determined that the State had not been vindictive in prosecuting Godsey for the Class A offense on retrial. By successfully seeking habeas relief after a negotiated plea, the plea agreement was voided and the parties were returned to their original positions. The evidence supports the State's contention that the "original position" was a Class A misdemeanor. *See Windom,* 968 S.W.2d at 363. The court was justified in finding that the State had not sought to retaliate against Godsey. *See Lopez,* 928 S.W.2d at 533. We overrule point ten.

## JURY ARGUMENT

In her eleventh point, Godsey argues that the court erred in failing to grant a motion for new trial based on improper jury argument. She points to the following portions of the State's argument:

> And according to the law, it's not just morally wrong, it's also against the law as long as the patient, Kathryn Linkenhoger, is aware of what is going on. . . . Kathryn Linkenhoger was afraid and she was right to be afraid. Her perception in that case was not a misperception because she cried out, 'Stop it, you're hurting me.' . . . But [Godsey] didn't look so professional when she was in the nursing home looming over Kathryn Linkenhoger sitting in a wheelchair, laughing at her. . . .

Godsey argues that the State's remarks were outside the record, injected the prosecutor's personal opinion into the record, and contained a fictional statement that Godsey had been "laughing" over Linkenhoger. The State defends its remarks as being supported by the evidence and being reasonable deductions therefrom.

■ Godsey concedes that she did not object to the argument but argues that she

had previously moved for a mistrial based on the prosecutor's trial conduct. A defendant's failure to object to jury argument or failure to pursue an objection to an adverse ruling forfeits the right to complain on appeal about the argument. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996) (overruling *Romo v. State*, 631 S.W.2d 504 (Tex.Crim.App. 1982), and *Montoya v. State*, 744 S.W.2d 15 (Tex.Crim.App.1987)). We overrule point eleven.

## WRITTEN STATEMENT

■ Godsey's thirteenth point asserts that the court erred in admitting Castillo's prior written statement. On direct examination, Castillo began testifying about the incident, stating that she was making Linkenhoger's bed while Reyna was bringing her from the shower. She stated that Linkenhoger was "hollering" and trying to pinch her when Godsey entered the room. When asked what Godsey did upon entering the room, Castillo stated that she did not remember. The State showed Castillo Exhibit No. 2, her statement of January 1996, and stated, "Now that you've refreshed your memory with the statement, I'm going to ask that it be introduced into evidence as State's Exhibit No. 2." Godsey objected to the admission of the statement: "[Castillo] is right there. If she wants to testify to anything, I think it would be preferable that she testify live to the jury where I have an opportunity to cross-examine her.... The best testimony and the way to conduct a trial is for her to testify to any statements she made against my client." The State responded that the statement should be admitted because "It's something that the jury can see, because not only is she going to testify here today, but she also wrote this closer to the event."

The court allowed Godsey to take Castillo on voir dire. Godsey questioned Castillo about Defense Exhibit No. 1, a written statement that she had given in May 1996. Castillo stated that she did not remember this later statement. Godsey renewed her objection "to the written statements" because Castillo "ought to testify from the stand as to what she knows. She shows that her memory is faulty when she relies upon written

statements, and we are entitled to have her tell right now what she knows to the jury." The court admitted both State's Exhibit No. 2 and Defense Exhibit No. 1.

On appeal, Godsey complains that the court erred in admitting the written statement, citing Rule of Evidence 803(5) which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> **Recorded Recollection.** A memorandum or record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the document's trustworthiness. *If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.*

Tex.R. Evid. 803(5) (emphasis added).

Godsey does not argue on appeal that the statement was untrustworthy and should not have been read into evidence. *Id.* Rather, she argues that the written document cannot be admitted as an exhibit unless offered by the adverse party and thus the court erred in admitting State's Exhibit No. 2 into evidence. *Id.*

The language of Rule 803(5) creates some confusion as to what evidence is "admitted." If a witness cannot remember the events, but states that the memorandum was accurately made when the "matter was fresh," the memorandum or record containing the recorded recollection may be "read into evidence." *Id.; Wigiert v. State*, 948 S.W.2d 54, 58 (Tex.App.—Fort Worth 1997, no pet.) (court did not err in allowing witness to read to the jury parts of her prior statement given to the police). The document itself, however, may not be "received as an exhibit" unless offered by the adverse party. Tex.R. Evid. 803(5);

*Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 842 (Tex.App.—Houston [1st. Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988) (oral evidence was admissible but court erred in admitting written document itself into evidence).

■ Assuming that Godsey's complaint at trial is the same as her point on appeal, we find that error occurred. We do not, however, overturn a conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. Tex.R.App. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 416 (Tex.Crim.App. 1998) (court erred in admitting statement into evidence because proper predicate had not been laid). The statement could have been read into evidence, but was not. Tex.R. Evid. 803(5). The contents of State's Exhibit No. 2 and Defense Exhibit No. 1 are substantially the same. Although the court erred in admitting State's Exhibit No. 2 into evidence, under these facts we do not find harm. We overrule point thirteen.

## MOTION FOR MISTRIAL

In point fourteen, Godsey complains that the court erred in failing to grant her motion for mistrial.

During Reyna's testimony, the State began questioning him on certain "pet" names Linkenhoger had called him. The court, on its own initiative, asked counsel to approach the bench and questioned whether the Dead Man's Statute prohibited the State from eliciting this testimony. Later in his testimony, Reyna recalled Godsey stating, "I'm faster than you are, lady." The State asked him, "[T]hen what happened ?" Reyna responded, "Kathryn said, 'You're hurting me'" and then described how Linkenhoger had spit and how Godsey had wiped it back in her face. After Reyna was cross-examined and excused, Godsey moved for a mistrial based on the grounds that the statement "You're hurting me" was hearsay and violated the Dead Man's Statute. The court overruled the motion.

■ We review a denial of a motion for mistrial under the abuse of discretion standard. *Kipp v. State,* 876 S.W.2d 330, 339 (Tex.Crim.App.1994). The Dead Man's Statute applies to civil actions concerning a decedent's estate. Tex.R. Evid. 601(b); *In re Estate of Watson,* 720 S.W.2d 806, 806–07 (Tex.1986). This is not such a case. Because the Dead Man's Statute did not apply, we cannot say that the court erred in failing to grant a mistrial on those grounds. *See Kipp,* 876 S.W.2d at 339. Furthermore, prior to Reyna's testimony, Castillo had testified that Linkenhoger had told Godsey that she was hurting her. A reversal is not required when similar evidence comes in without objection, either before or after the complained-of ruling. *Leday v. State,* 983 S.W.2d 713, 718 (Tex.Crim.App.1998).

We do not find that the court abused its discretion in denying the motion for mistrial. *See Kipp,* 876 S.W.2d at 339. We overrule point fourteen.

## IDENTIFICATION

■ Point fifteen complains that the court erred in failing to grant Godsey's motion for acquittal when the State rested without an in-court identification. She argues that her identity is an element of the offense which was not proven. Tex. Pen.Code Ann. § 2.01 (Vernon 1994). The State responds that Godsey identified herself at arraignment and entered her plea of not guilty, thus fixing her identity. *See* Tex.Code Crim. Proc. Ann. art. 26.02 (Vernon 1989). The court's judgment recites that Godsey had been arraigned. During voir dire, defense counsel asked the venire panel to "look at Gale Godsey" asking, "Doesn't look like a criminal, does she?" Prior to opening arguments, the court asked defense counsel to "please rise with your client" as "the defendant" entered her plea of "not guilty." During opening arguments, defense counsel referred to, "my client, Gale Godsey."

Viewing the evidence in the light most favorable to the judgment, we do not find that the court erred in denying the motion for acquittal based on lack of identification of the defendant. *See Madden v. State,* 799

S.W.2d 683, 686 (Tex.Crim.App.1990). We overrule point fifteen.

## VENUE

■ Point sixteen complains that the court erred in failing to grant a motion to dismiss when the State rested without proving that the offense occurred in Johnson County.

■ Venue is not an element of the offense and must be proven only by a preponderance of the evidence. TEX.CODE CRIM. PROC. ANN. art. 13.17 (Vernon 1977); *Black v. State*, 645 S.W.2d 789, 790 (Tex.Crim.App. 1983). As a general rule courts will take judicial notice of the location of a particular town or city and that the town or city is a county seat. *Black*, 645 S.W.2d at 791. Exhibit No. 14, an internal report from the nursing center which Godsey has not challenged, describes the assault and lists the address of the Cleburne Health Care Center as "1108 W. Kilpatrick St., Cleburne, Texas, 76033." Exhibits Nos. 2, 6 and 9, statements from the nursing home employees giving details of the assault, reflect that the statements were taken at "1108 W. Kilpatrick St. in Johnson County, Texas."

We find that the court did not err in refusing to dismiss the case on venue grounds. We overrule point sixteen.

## CONCLUSION

Having overruled all points of error, we affirm the judgment.