Board of Adjustment of the City of Waco v. McLennan County, Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-046-CV

Â Â Â Â Â THE BOARD OF ADJUSTMENT
Â Â Â Â Â OF THE CITY OF WACO, TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â McLENNAN COUNTY, TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the County Court at Law No. 1
McLennan County, Texas
Trial Court # 20001389 CV1
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â The Appellant has filed a motion to dismiss this appeal in which it asserts that the parties have
settled their dispute. In relevant portion, Rule 42.1 of the Texas Rules of Appellate Procedure
provides:
(a) The appellate court may dispose of an appeal as follows:
(1) in accordance with an agreement signed by all parties or their attorneys and
filed with the clerk; or
(2) in accordance with a motion of appellant to dismiss the appeal or affirm the
appealed judgment or order; but no party may be prevented from seeking any
relief to which it would otherwise be entitled. 
Tex. R. App. P. 42.1.
Â Â Â Â Â Â The appeal is dismissed. Costs are taxed against the party incurring them.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â PER CURIAM

Before Chief Justice Davis,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Gray
Appeal dismissed
Opinion delivered and filed August 1, 2001
Do not publish



ecks were a
loan.   

During a search of MayfieldÂs home, police
found counterfeit checks, Moneygram orders, and gift checks.Â  At trial,
witnesses testified to three checks that were not authorized.Â  Senior Corporal
Randy Turner responded to a forgery call regarding a check from SÂKool Smartz,
Inc.Â  Mayfield told Turner that she received the check as a business
investment.Â  In a supplemental report, Detective Patrick Bassinger stated that
Mayfield said she was trying to verify the check and did not negotiate the
check.Â  Turner, Arnold, and a bank employee testified to the contrary.

Teresa Cook testified that the $850
Moneygram orders were not authentic.Â  They were not machine -printed, contained
a yellow heat-seeking spot instead of a pink spot, and lacked magnetic ink.Â  Ninety
percent of counterfeit orders are for $850.

Sergeant Billy Couch testified that he
found several $100 American Express gift checks in MayfieldÂs home.Â  The checks
were found in an envelope postmarked Cotonou Jericho Republic Du Benin.Â 
Henegar testified that the gift checks were not authorized by American Express.

Arnold testified that Mayfield
maintained approximately thirty bank accounts, through which hundreds of
thousands of dollars had traveled. Â Over one-hundred wire transfer receipts
were found in MayfieldÂs home, sent by either Mayfield or others, to
California, New York, and several foreign countries.Â  Arnold learned that
MayfieldÂs Western Union privileges had been suspended.Â  He received three
suspected activity reports regarding Mayfield, two of which were filed by
Western Union.

Arnold also discovered the following
email from Mayfield:

I received your checks but am afraid to
use them.Â  If they are forgeries, I can go to jail.Â  This is a state jail
forgery.Â  I cannot take a chance.Â  More likely than not they are forgeries.

Â 

Mayfield had not voluntarily disclosed
this email, which was written the day before she cashed the first two
travelerÂs checks.

Secret Service agent James Napolitano
testified that common terms used in a scam include Âpayment representativeÂ and
Âconsignment.ÂÂ  Napolitano testified that signs of active participation include
the use of Moneygram and Western Union to transfer money, the use of numerous
accounts, and failure to declare income on tax returns.Â  He explained that
people often use emails to show innocence, but when their homes are searched,
investigators find other non-disclosed documents.Â  Too many documents, too much
activity, and notification of the scam indicates that a person is probably an
Âactive participantÂ who knew something was wrong, but chose to continue their
involvement Âas a way to make a living.ÂÂ  Napolitano testified that Mayfield
has not filed tax returns since 2002.

Christopher McCloskey testified that he
probably warned Mayfield about email scams and admitted that Mayfield asked him
to wire money. Â McCloskey believed that Mayfield was a victim.Â  Dale Calcarone
testified that he knew about the travelerÂs checks because Mayfield told him
that she handled other peopleÂs accounts.

Â Â Â Â Â Â Â Â Â Â Â  Mayfield testified that she
practices international law and became a back-order payment representative
after talking with some international attorneys.Â  She admitted being warned
about email scams. Â Mayfield testified that she eventually received some bad
documents from Benin and determined that documents from this location are probably
false.Â  Mayfield testified that she did nothing with documents that could not
be verified.Â  She testified that some checks looked questionable, but were
verified by the bank.Â  She testified that other checks were not verified, such
as an Ontario check that was initially verified and placed on hold.Â  She
explained that the SÂKool Smartz check was a loan, but that it was a bad check
and she was scammed.Â  She also knew one of the other checks was a scam.Â  She
stopped cashing Canadian checks.

Mayfield testified that she would do no
more business with a company after receiving a bad check.Â  She attempted to
obtain loans from investment companies, but never received any good money.Â  Specifically,
she testified that several of the counterfeit checks were loans.Â  She denied
getting any money out of the transactions and testified that only one check was
ever cashed as part of the back-order payment business. Â She sent paperwork to
an ex-police officer to review for authenticity.Â  She admitted communicating
with people even after she was warned about them.

Mayfield testified that she received the
travelerÂs checks as customs fees for a consignment.Â  She testified that
consignments are Âpies in the skyÂ and Âmirages,Â but are fine when the internet
is not involved.Â  She advised the bank teller of her concerns regarding the
checks.Â  She assumed that First National verified the checks.Â  She never expected
that First National would not call American Express to verify the checks.Â  She
had attempted to do so herself, but was referred to First National.Â  She did
not reimburse First National because the bank would not sign a release.

Â 

LEGAL AND FACTUAL SUFFICIENCY

Â Â Â Â Â Â Â Â Â Â Â  In points one and two,
Mayfield challenges the legal and factual sufficiency of the evidence to
support her forgery conviction, specifically knowledge and intent.Â  

To prove the offense of forgery by
passing, the State must show that the defendant: (1) with intent to defraud or
harm another (2) passed (3) a writing (4) that purported to be the act of another
and (5) that other person did not authorize the act.Â  See Tex. Pen. Code
Ann. Â§ 32.21(a)(1)(B), (b)
(Vernon Supp. 2009); Williams v. State, 688 S.W.2d 486, 488 (Tex. Crim.
App. 1985). Â Intent to defraud or harm requires
proof of knowledge that the instrument is forged.Â  See Williams, 688 S.W.2d at 488.Â  Intent may be established by
circumstantial evidence.Â  Id.Â  Intent may be inferred if the
State establishes that the defendant knew the instrument was forged.Â  See
Beaty v. State, 156 S.W.3d 905,Â 909Â (Tex. App.ÂBeaumont 2005, no
pet.).Â  ÂA finding of such
knowledge generally requires evidence of at least Âsuspicious circumstancesÂ
showing that the defendant knowingly passed the forged check.Â Â Laws v. State, No.
14-00-01093-CR, 2001 Tex.
App. LEXIS 7576, at *11Â (Tex. App.ÂHouston [14th Dist.] Nov. 8, 2001, no
pet.) (not designated for publication).

Mayfield contends that the evidence is
legally and factually insufficient because: (1) she did not forge the travelerÂs
checks; (2) she signed her own name on the checks; (3) she did not know that
the checks were counterfeit; (4) she merely received the checks in the mail;
and (5) she did not profit from the transactions. Â However, several suspicious circumstances
support a finding of intent and knowledge.

First, to be guilty of passing a forged check, it was unnecessary
that Mayfield be the actual maker of the check.Â  See McFarland v. State,
605 S.W.2d 904, 907 (Tex. Crim. App. 1980). Â Under Â§ 32.21(a)(1)(B), it is sufficient that the person Âutters (or passes, issues,
etc.)Âa writing that is forged.ÂÂ 
Id. Â Henegar
testified that American Express did not authorize the checks.Â  The checks
purported to be the act of American Express, but were actually counterfeit.Â 
Mayfield admitted passing the checks.

Second, the travelerÂs checks were payable to Mayfield; thus,
signing her own name on the checks was the only way to deposit the check.Â  See
Laws, 2001 Tex. App. LEXIS 7576, at *16.Â  Signing
her own name does not negate intent or knowledge.

Third, Urban and Henegar testified to numerous
defects on the face of the checks.Â  The
day before cashing the first two checks, Mayfield wrote an email expressing
concerns that the checks were forgeries.Â  By her own admission, she took the checks to the bank to verify them.Â 
Four days later, she cashed the remaining checks.Â  This evidence suggests an
awareness of the checksÂ fraudulent nature.Â  See Velu v. State, No.
10-07-00327-CR, 2009 Tex.
App. LEXIS 1353,Â atÂ *11-13 (Tex. App.ÂWaco Feb. 25, 2009, pet. refÂd)
(not designated for publication);
see also Laws, 2001 Tex. App. LEXIS 7576, at *13, 15.

Fourth, Mayfield gave conflicting
stories regarding the purpose of the travelerÂs checks, i.e., a customs
fee, part of a contract, and a loan.Â  The jury was entitled to consider these
conflicts as evidence of guilt and bore the burden of resolving such conflicts
either for or against Mayfield.Â  See Velu,
2009 Tex. App. LEXIS 1353,Â atÂ *8-9; see also Kemmerer
v. State, 113 S.W.3d
513, 516 (Tex. App.ÂHouston [1st Dist.] 2003, pet. refÂd); Lancon v. State, 253 S.W.3d 699, 707 (Tex. Crim.
App. 2008); Wyatt
v. State, 23 S.W.3d 18,
30 (Tex. Crim. App. 2000).

Fifth, NapolitanoÂs testimony
establishes that Mayfield has engaged in activities and used terminology that
suggests she is an active participant in the scam. Â Intent and knowledge may be
inferred Âfrom any facts
which tend to prove its existence, including the acts, words, and conduct of
the accused.ÂÂ  Hart v. State, 89 S.W.3d 61, 64 (Tex. Crim.
App. 2002).

Finally, forgery by passing Âdoes not require a showing that the
defendant actuallyÂ received consideration in exchange for the check.ÂÂ  Landry v. State, 583 S.W.2d 620, 623 (Tex. Crim. App.
1979); see McGee v. State, 681 S.W.2d 31 (Tex. Crim. App. 1984); see also Velu, 2009 Tex. App. LEXIS 1353,Â atÂ *10-11.

In summary, the jury could reasonably
conclude that Mayfield, a licensed attorney who knew about email scams and had
prior problems with such scams, was not the victim of a scam, but knew that the
travelerÂs checks were fraudulent and chose to cash them.Â  Knowing the checks
to be fraudulent, but making the conscious decision to attempt to cash them,
evidences intent to defraud or harm another.Â  See Velu,
2009 Tex. App. LEXIS 1353,Â atÂ *13; see also Beaty, 156 S.W.3d
atÂ 909.

Viewing
all the evidence in the light mostÂ favorable to the verdict, the jury
could reasonably conclude, beyond a reasonable doubt, that Mayfield committed
the offense of forgery.Â  See Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000); see also Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).Â  The
proof of guilt is not so weak norÂ the conflicting evidence so strong as to
render the juryÂs verdict clearly wrong or manifestly unjust.Â  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). Â Because the evidence is legally and factually
sufficient to sustain MayfieldÂs forgery conviction, we overrule points one and
two.

THE FORGERY STATUTE

Â Â Â Â Â Â Â Â Â Â Â  In point three, Mayfield
argues that section 32.21 of the Texas Penal Code, which defines Âforgery,Â is
unconstitutionally vague and overbroad and unconstitutional as applied.Â  However,
facial and Âas appliedÂ challenges to the constitutionality of a statute must
be raised at trial, not for the first time on appeal.Â  See Karenev v. State,
281 S.W.3d 428, 434 (Tex. Crim. App. 2009);
see also Flores v. State, 245 S.W.3d 432, 437 n.14 (Tex.
Crim. App. 2008).Â 
Because Mayfield failed to challenge the constitutionality of the forgery
statute at trial, point three is not preserved for appellate review.

EXPERT WITNESSES

Â Â Â Â Â Â Â Â Â Â Â  In point four, Mayfield challenges
the StateÂs designation of experts.[1]Â 
She first complains that the State designated experts by placing a ÂslashÂ
after the names; yet, she did not object to any such defects.Â  See Tex. R. App. P. 33.1(a).Â  She also
complains that the trial court failed to conduct Daubert hearings, but
she never requested any such hearings.Â  See Stephens v. State, 276
S.W.3d 148, 153 (Tex. App.ÂAmarillo 2008, pet. refÂd); see also Scherl v.
State, 7 S.W.3d 650, 655 (Tex. App.ÂTexarkana 1999, pet. refÂd).Â  Finally,
she complains about the denial of her requests to voir dire Detective Arnold
and Agent Napolitano.Â  However, she did not ask to take Napolitano on voir
dire.Â  At the time she asked to take Arnold on voir dire, Arnold was about to
testify to MayfieldÂs delivery of emails to him and her purpose for doing so,
not his expert opinion.Â  See Tex.
R. Evid. 701; see also Tex.
R. Evid. 705(b); Goss v. State, 826 S.W.2d 162, 168 (Tex. Crim.
App. 1992); Meier v. State, No.
05-08-00486-CR, 2009 Tex.
App. LEXIS 2051, at *21-22 (Tex. App.ÂDallas Mar. 25, 2009, no pet.) (not
designated for publication).Â  Under these circumstances, point four is not
preserved for appellate review.

MOTION FOR SEVERANCE

Â Â Â Â Â Â Â Â Â Â Â  In point five, Mayfield
challenges the denial of her motion to sever offenses.Â  Mayfield did not urge
her motion to sever until after the jury was sworn and testimony had begun.Â  Because
her motion was not timely raised, point five is not preserved for appellate
review.Â  See Thornton v. State, 986 S.W.2d 615, 617-18 (Tex. Crim.
App. 1999).

ADMISSION OF RECORDINGS AND TRANSCRIPTS

Â Â Â Â Â Â Â Â Â Â Â  In point six, Mayfield challenges
the admission of recordings and transcripts of her statements because the tapes
were never disclosed and contain Âdiscrepancies.Â

Â Â Â Â Â Â Â Â Â Â Â  Detective Arnold testified
that exhibits 4B, 4C, and 4D are true and accurate recordings of his
conversations with Mayfield.Â  Transcripts for exhibits 4C and 4D were published
to the jury.Â  The trial court instructed the jury on the use of transcripts.Â  The
trial court overruled MayfieldÂs objections to these exhibits.

The State represented that the
recordings were disclosed to Mayfield before trial.Â  Even assuming they were
not, Brady v. Maryland,
373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) does Ânot apply when the appellant was already aware of the
information.ÂÂ  Hayes v.
State, 85 S.W.3d 809,
815 (Tex. Crim. App. 2002).Â  Mayfield knew she made the statements and was
aware of the contents of those statements because she was present when they
were made.Â  See id.; see also Pollard v. State, No.
09-06-00294-CR, 2007 Tex.
App. LEXIS 7302, at *13 (Tex. App.ÂBeaumont Sept. 5, 2007, pet. refÂd) (not
designated for publication).Â  The
record further contains authenticating testimony from a witness with knowledge,
Arnold, that the recordings are what they are Âclaimed to be.ÂÂ  See Tex. R. Evid. 901(b)(1); see also Angleton v.
State, 971 S.W.2d 65, 67-68 (Tex. Crim. App. 1998); Ball v. State, No. 10-04-00093-CR, 2005 Tex. App. LEXIS 2575, at *3-4 (Tex.
App.ÂWaco Mar. 30, 2005, no pet.) (not designated for publication). Â There is
no affirmative evidence of any alterations to the tapes.Â  See Ballard v.
State, 23 S.W.3d 178,Â 183Â (Tex. App.ÂWaco 2000, no pet.).Â  We
overrule point six.

CLOSING ARGUMENT

Â Â Â Â Â Â Â Â Â Â Â  In point seven, Mayfield
contends that the State engaged in improper closing arguments by expressing
belief regarding her guilt or the truth of her testimony.

Â Â Â Â Â Â Â Â Â Â Â  During closing arguments,
the StateÂs attorney stated:

Âthe defendant in this case is nothing
more than a fraud.Â  She is a scam artist.Â  Since 2002, she has pulled off scam
after scam after scam and she has profited off of scam after scam after scam;
and I submit to you that she has come before you-all all through this week and
she is trying to pull off yet another scam, perhaps her greatest scam of all.Â  

Â 

The prosecutor later argued, ÂThere are
two things that Miss Mayfield said when she took the stand that were true.Â  My
name is Helen Mayfield, and IÂm a lawyer.Â  Everything else was a lie.ÂÂ 
Mayfield did not object to either argument.

Mayfield contends that it was
unnecessary for her to object because her substantial rights were affected.Â  It is an established rule that Âa
defendantÂs failure to object to a jury argument or a
defendantÂs failure to pursue to an adverse ruling his objection to a jury
argument forfeits his right to complain about the argument on appeal.ÂÂ  Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim.
App. 1996); see Threadgill v. State, 146 S.W.3d 654, 670 (Tex. Crim.
App. 2004); see also Godsey v. State, 989 S.W.2d 482, 496 (Tex. App.ÂWaco
1999, pet. refÂd). Â Because improper jury argument may not be raised
for the first time on appeal, point seven is not preserved for appellate
review. Â See Cockrell, 933 S.W.2d at 89; see
also Threadgill, 146 S.W.3d. at 670; Moreno v. State, 195 S.W.3d 321, 329 (Tex. App.ÂHouston
[14th Dist.] 2006, pet. refÂd).

MOTION TO SUPPRESS

Â Â Â Â Â Â Â Â Â Â Â  In point eight, Mayfield challenges
the denial of her motion to suppress, arguing that (1) the State admitted a search
warrant and affidavit different from the one with which she was served; (2) the
warrant is not supported by probable cause; (3) the warrant does not name an
offense; (4) there is no nexus between the place searched and the evidence; (5)
the affidavit contains false statements; (6) section 312.014 of the Government
Code and articles 18.01 and 38.23 of the Code of Criminal Procedure were
violated; and (7) the warrant is overbroad.

We first note that the trial court did
not abuse its discretion by admitting a certified copy of the search warrant
and affidavit. Â See Tex. R.
Evid. 902(4); see also Hooper v. State, No. 03-08-00125-CR, 2009 Tex. App. LEXIS 7880, at *19 (Tex.
App.ÂAustin Oct. 9, 2009, no pet.) (not designated for publication).

Next, MayfieldÂs probable cause
contention appears to be based on her complaint that the warrant and affidavit
do not establish an offense. Â In his affidavit, Arnold explained that First
National made a forgery report regarding the travelerÂs checks that were cashed
by Mayfield and returned as counterfeit.Â  He detailed his subsequent follow-up
investigation and concluded that Mayfield was Âactively involvedÂ in a Nigerian
scam.Â  These facts allege the offense of forgery by passing.Â  See Tex. Pen. Code Ann. Â§ 32.21(a)(1)(B), (b). Â The warrant and affidavit need not
adhere to the Âstrict technical requirements imposed on charging instruments.ÂÂ 
Vega v. State, 680 S.W.2d 515, 517 (Tex. App.ÂHouston
[1st Dist.] 1984, pet. refÂd).

Finally, during the suppression hearing,
Mayfield did not raise a nexus argument, identify any false statements in the
affidavit,[2]
argue that the warrant was overbroad, or do more than cite to sections of the
United States and Texas Constitutions or the Code of Criminal Procedure.Â  These
global arguments made at
trial are not sufficiently specific to preserve for our review MayfieldÂs remaining
challenges to the search warrant. Â See Tex. R.
App. P. 33.1(a);
see also Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim.
App. 2005); Noland
v. State, No. 10-07-00260-CR, 2009 Tex. App. LEXIS 4817, at *7-8 (Tex.
App.ÂWaco June 24, 2009, pet. refÂd) (not designated for publication); Armstrong v. State,
No. 10-08-00114-CR, 2009 Tex. App. LEXIS 2971, *5-6 (Tex.
App.ÂWaco Apr. 29, 2009, no pet.) (not designated for publication).Â  We
overrule point eight.

Â 

MOTION FOR MISTRIAL

Â Â Â Â Â Â Â Â Â Â Â  In point nine, Mayfield
challenges the denial of her motion for mistrial.

Â Â Â Â Â Â Â Â Â Â Â  The State asked Detective
Arnold about a man who wired money to Mayfield: ÂEmil Sheringer is about to go
to trial in New York City for wire fraud and money laundering Â.ÂÂ  Mayfield
objected on grounds of leading.Â  The trial court overruled the objection.Â  The
State continued:

State: Emil Sheringer, is he about to go
on trial in New York City for money laundering, wire fraud, and mail fraud?

Â 

Arnold: Yes, sir, at least at the time
--

Â 

Mayfield: Objection, relevance, Your
Honor.

Â 

The trial court sustained the objection
and granted MayfieldÂs request for an instruction to disregard the StateÂs
question, but denied MayfieldÂs motion for a mistrial.

Â Â Â Â Â Â Â Â Â Â Â  Although Mayfield evidently knew the question was
objectionable when asked the second time, she did not object until after the grounds for the objection were
apparent and the objectionable question had been asked and answered.Â  Under
these circumstances, her objection was untimely.Â  See Dinkins v. State, 894 S.W.2d 330, 355 (Tex. Crim.
App. 1995); see also Zmolik
v. State, No. 10-09-00281-CR, 2010 Tex. App. LEXIS 1912, at *5-7 (Tex.
App.ÂWaco Mar. 10, 2010, no pet.) (not designated for publication).Â  We overrule point nine.

DUTY OF PROSECUTOR

Â Â Â Â Â Â Â Â Â Â Â  In point ten, Mayfield
contends that the prosecutor violated a duty to correct perjured testimony and disclose
exculpatory evidence.

Â Â Â Â Â Â Â Â Â Â Â  Mayfield argues that five of
the StateÂs witnesses committed perjury.Â  At no time did she object to any
allegedly false testimony or the StateÂs use of such testimony.Â  This complaint
is not preserved for appellate review.Â  See Davis v. State, 276 S.W.3d
491, 499-500 (Tex. App.ÂWaco 2008, pet. denied).

Â Â Â Â Â Â Â Â Â Â Â  Mayfield also argues that the
State failed to disclose exculpatory evidence and concealed evidence, including
her statements, emails, files, wire transfer receipts, communications, and
tapes of any items being cashed.Â  As previously stated, Brady does not
apply to evidence of which Mayfield is aware.Â  See Hayes, 85
S.W.3d at 815; see also Pollard, 2007 Tex. App. LEXIS 7302, at
*13.

Â Â Â Â Â Â Â Â Â Â Â  Mayfield further contends
that the State failed to advise the jury that obtaining a loan, accepting money
for/from a client, or wiring oneÂs own funds are not crimes.Â  The record does
not show that the State ever suggested that these were criminal acts or that
Mayfield had committed an offense by engaging in such acts.Â  This complaint
presents nothing for our review.Â  See
Johnson v. State, No.
10-07-00315-CR, 2009 Tex.
App. LEXIS 5304, at *7-8 (Tex. App.ÂWaco July 8, 2009, no pet.) (not designated
for publication).

Finally, Mayfield argues that the State lied,
coached witnesses to lie, fabricated emails, altered documents, and failed to
disclose warrantless searches of her home and car.Â  These are conclusory
allegations that are not supported by the record. Â See Khoshayand v. State,
179 S.W.3d 779, 783 (Tex. App.ÂDallas 2005, no pet.); see also Hudson v.
State, No.
03-04-00733-CR, 2006 Tex.
App. LEXIS 7280, at *15-16 (Tex. App.ÂAustin Aug. 18, 2006, no pet.) (not
designated for publication).Â  We overrule point ten.

Â 

ADMISSION OF CHARACTER EVIDENCE

Â Â Â Â Â Â Â Â Â Â Â  In point eleven, Mayfield
challenges the admission of improper character evidence in the form of alleged
honor code violations, wire transfers, extraneous checks, and American Express
gift checks.

Â Â Â Â Â Â Â Â Â Â Â  First, the record shows that
the State abandoned its request to introduce evidence of alleged honor code
violations.Â  Second, when Detective Arnold testified about
numerous wire transfers, Mayfield did not object.Â  See Tex. R.
App. P. 33.1(a);
see also Wilson
v. State, 71 S.W.3d
346, 349 (Tex. Crim. App. 2002).Â  Third, Mayfield did not object when other
witnesses, including herself, were subsequently asked about and/or testified to
one or more of the four extraneous checks.[3] Â See Lasher v. State, 202 S.W.3d 292, 295 n.1 (Tex.
App.ÂWaco 2006, pet. refÂd);
see also Velu, 2009 Tex. App. LEXIS 1353,Â at
*26-27Â n.2.Â  Finally, when the State admitted the
gift checks, Mayfield had Âno objections.ÂÂ  See Swain, 181 S.W.3d at 368; see
also Grisso v. State, 264 S.W.3d 351, 354 (Tex.
App.ÂWaco 2008, no pet.).Â  Under these circumstances, we overrule
point eleven. 

GRAND JURY TESTIMONY

Â Â  Â Â Â Â Â Â Â Â  In point twelve, Mayfield challenges
the denial of her motion for disclosure of grand jury transcripts.Â  At trial, the
State represented that no transcript exists. Â The record does not show
otherwise.Â  Moreover, Mayfield did not advise the trial court of a
Âparticularized needÂ for the transcripts, nor has she done so on appeal.Â  Tex. Code Crim. Proc. Ann. art.
20.02(d) (Vernon Supp. 2009); see
Martinez v. State, 507 S.W.2d 223, 225-26 (Tex. Crim.
App. 1974).Â Â Accordingly, we
overrule point twelve.

APPOINTMENT OF STANDBY COUNSEL

Â Â Â Â Â Â Â Â Â Â Â  In point thirteen, Mayfield
contends that the trial court violated the Sixth Amendment by appointing standby
counsel, whom she alleges was ineffective.

Mayfield did not object to the
appointment of standby counsel or standby counselÂs participation at trial.Â  See
Jordan v. State, No.
08-05-00286-CR, 2007 Tex.
App. LEXIS 4118,Â atÂ *17-19 (Tex. App.ÂEl Paso May 24, 2007, no pet.)
(not designated for publication).Â  Mayfield Âcontrolled the organization and content of [her] defense,
made motions, argued points of law, participated in voir dire, questioned
witnesses, and addressed the courtÂ and jury at appropriate times
throughout the course of the proceedings.Â Â Lopez v. State,
No. 08-05-00032-CR, 2007 Tex. App. LEXIS 666, at *7-8 (Tex.
App.ÂEl Paso Jan. 31, 2007, pet. refÂd) (not designated for publication).Â  Once she Âcompetently and intelligently
invoke[d] [the] right to self-representation,Â she waived the right to
appointed counsel and cannot Âattack [] standby counsel as being ineffective.ÂÂ  Felton v. State, No.
05-92-02442-CR, 1994 Tex.
App. LEXIS 3562,Â at *24 (Tex. App.ÂDallas Dec. 6, 1994, no pet.) (not
designated for publication) (citingÂ Dunn v. State, 819 S.W.2d 510,
526 (Tex. Crim. App. 1991)); see Flores v. State, 789 S.W.2d 694, 697
(Tex. App.ÂHouston [1st Dist.] 1990, no pet.).Â  We overrule point thirteen.Â  See
McKaskle v. Wiggins, 465 U.S. 168, 184, 104 S. Ct.
944, 954, 79 L. Ed. 2d 122 (1984).

Â 

Â 

OTHER POINTS OF ERROR

Throughout her thirteen points of error,
Mayfield has argued that: (1) the attorney-client privilege bars prosecution;
(2) the pre-emption doctrine bars prosecution; (3) the indictment should be
dismissed; and (4) the justice of the peace court and county court at law
lacked jurisdiction to allege a felony.Â  Aside from occasionally citing inapplicable
authority, Mayfield fails to make arguments or cite authorities to support her
contentions. Â We will not make MayfieldÂs arguments for her.Â  Because these
allegations are inadequately briefed, they are waived.Â  See Tex. R.
App. P. 38.1(h)
and (i); see also Wyatt, 23 S.W.3d at 23 n.5;
Johnson v. State, 263 S.W.3d 405, 416-17 (Tex. App.ÂWaco
2008, pet. refÂd).

The judgment is affirmed.Â Â Â  

Â  



FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed July 28, 2010

Do not publish

[CR25]









[1] Â Â Â Â Â Â Â Â Â Â Â Â Â  Mayfield contends that
the trial court refused to conduct hearings on her pre-trial motions for
StateÂs witnesses and disclosure of expert witnesses.Â  The trial court held two
different pre-trial hearings, during which Mayfield could have urged her
motions.

Â 





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  At most, Mayfield
challenged statements regarding the cashing of checks in 2002.Â  The record is
unclear as to which statements Mayfield refers.





[3] Â Â Â Â Â Â Â Â Â Â Â Â Â  Mayfield contends that she
received a running objection to the admission of extraneous-offense evidence.Â 
According to the record, however, standby counsel requested a contemporaneous
limiting instruction to accompany the admission of each extraneous offense.Â 
The trial court granted a running objection to any instance where no contemporaneous
limiting instruction was given.Â  Mayfield neither requested nor received a
running objection to admission of extraneous-offense evidence itself.