

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00277-CR

Cody Lee **WISECARVER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CR210000038
Honorable M. Rex Emerson, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:          Irene Rios, Justice
                  Beth Watkins, Justice
                  Lori I. Valenzuela, Justice

Delivered and Filed: March 27, 2024

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellant Cody Lee Wisecarver raises two evidentiary issues on appeal from his conviction for evading arrest or detention with a motor vehicle, a third-degree felony offense that was enhanced to a second-degree felony offense at punishment. *See* TEX. PENAL CODE ANN. §§ 12.42(a), 38.04(b)(2)(A). We affirm the trial court's judgment in part, and we reverse it in part. We remand this cause to the trial court to conduct a new punishment proceeding for Wisecarver consistent with this opinion.

## BACKGROUND

While on patrol in November 2020, former Bandera City Deputy Marshal William Smith noticed Wisecarver's small silver SUV parked in front of Cindy Coffey's house. Coffey is Wisecarver's mother. Wisecarver had an active warrant for his arrest. Deputy Smith parked his patrol vehicle nose-to-nose with Wisecarver's SUV and approached the SUV. Upon approaching the SUV, Deputy Smith noticed Wisecarver laid back in the driver's seat.

Deputy Smith testified he attempted to explain to Wisecarver that he had a warrant for his arrest and to allow Deputy Smith to arrest him and take care of everything before the Thanksgiving holiday. According to Deputy Smith, rather than comply with his instructions, Wisecarver became angry and drove away at a high rate of speed. While Deputy Smith was not wearing his body camera at the time of the encounter, his dash camera in his patrol vehicle recorded part of the incident. The soundless recording shows Wisecarver speeding away in his SUV, and Deputy Smith then walking to his patrol vehicle, turning his vehicle around, and driving away in the same direction as Wisecarver.

Coffey testified on behalf of her son. According to Coffey, her son parked outside her house on the day in question and called her to ask for gas money to drive to a job in San Antonio. Coffey testified that she observed the encounter between her son and Deputy Smith through her security-camera system, beginning with Deputy Smith pulling his patrol vehicle in front of Wisecarver's SUV. Additionally, Coffey stated she was able to hear some of Wisecarver and Deputy Smith's conversation through a phone call with her son that was already in progress. Coffey explained she watched Deputy Smith approach Wisecarver's SUV, talk with her son, walk back to his patrol vehicle, then return to Wisecarver's SUV. Coffey added that after Deputy Smith and Wisecarver spoke again, her son drove away in a normal fashion. At no time did Coffey see

or hear anything that led her to think Deputy Smith was trying to arrest her son, or that he was not free to leave. Coffey acknowledged she did not preserve the security camera footage.

Following his surrender to law enforcement days later, Wisecarver was arrested and charged with evading arrest or detention with a motor vehicle, a third-degree felony. *See id.* § 38.04(b)(2)(A). A jury found Wisecarver guilty, and recommended Wisecarver be sentenced to seventeen years' imprisonment after finding the State's enhancement allegation true, which enhanced Wisecarver's punishment to a second-degree felony. *See id.* § 12.42(a). The trial court accepted the jury's sentencing recommendation and sentenced Wisecarver to seventeen years' imprisonment. Wisecarver appeals.

### GUILT/INNOCENCE PHASE: ADMISSION OF 911 CALL

In his first issue, Wisecarver complains about the trial court's admission of State's Exhibit No. 3, specifically the 911 call from an identified caller regarding a recklessly driven small silver SUV.[1] Claiming the admission of the 911 call was more prejudicial than probative—because the caller did not identify any physical characteristics of the driver or provide further details about the SUV other than it was small and silver—Wisecarver argued the trial court's admission of the 911 call violated Rule 403 of the Texas Rules of Evidence. *See* TEX. R. EVID. 403.

#### A.    *State Exhibit 3 and the 911 Call*

Following the defense's case-in-chief—wherein Wisecarver's mother testified contrary to Deputy Smith's testimony that Wisecarver became angry and sped away in his SUV after being

---

[1] Several times in his brief, Wisecarver refers to the admission of certain "911 calls," however, when reviewing the entire contents of State's Exhibit 3, there is only one 911 call made by an individual who identified himself. The remaining recorded content in State's Exhibit 3 consists of several conversations between various officers with the Bandera County Sheriff's Office and dispatch at the 911 call center in Bandera County. Wisecarver's issue on appeal appears to focus on the 911 call. During trial, however, Wisecarver complained about the entire State's Exhibit 3, including the dispatch and officer conversations, and how they related to the 911 call as well. We will address Wisecarver's complaint regarding the 911 call but also refer to the entire contents on State's Exhibit 3 when necessary, referring to them as "the dispatch recordings" and "the 911 call," or collectively "the recordings."

told about the warrant for his arrest—the State called a rebuttal witness, Amber Chupp, the communications supervisor with the Bandera County Sheriff's Office.

Chupp testified she oversees the daily operations of the 911 call center and acts as the custodian of records for the dispatch recordings and 911 calls that come into the center. Chupp created an audio CD recording of both the dispatch recordings and the 911 call concerning Wisecarver's case. She provided the CD and the CAD sheet, a short-hand printed narrative created by the person handling the 911 call. The State sought to admit both State's Exhibit 3, the recordings, and State's Exhibit 4, the CAD sheet.

Wisecarver objected to both exhibits claiming the admission of the recordings was more prejudicial than probative and to the portion of the CAD sheet referencing the 911 call. The State, on the other hand, argued the exhibits should be admitted to rebut Wisecarver's case-in-chief that "painted a false impression to the jury that this was a consensual encounter." The State argued the recordings provided evidence refuting Wisecarver's claim he peacefully drove away after his encounter with Deputy Smith. The trial court admitted both State's Exhibits 3 and 4.[2]

The State played portions of Exhibit 3 while Chupp explained what was being said during the dispatch recordings. Chupp was one of the dispatchers on the recordings. The dispatch recordings started with Deputy Smith reporting Wisecarver had fled from his mother's house after being made aware of the arrest warrant. In the recording Deputy Smith explained Wisecarver was driving a small silver SUV with temporary license plates and provided the direction Wisecarver was driving when he left. Other officers in subsequent dispatch recordings discussed Wisecarver's potential location as they looked for Wisecarver.

---

[2] While Wisecarver objected to both State's Exhibits 3 and 4 at trial, Wisecarver does not complain about State's Exhibit 4 on appeal. Therefore, Wisecarver's first issue is limited to complaints pertaining to State's Exhibit 3.

The 911 call was then played. The 911 caller identified himself and stated that the driver of a small silver SUV ran a red light, almost hit him, and "he was flying." The 911 caller provided his location. After showing Chupp a map of the area, Chupp explained that the location the 911 caller identified and the location Wisecarver was reported as originally fleeing from Deputy Smith were within a few city blocks of each other. Chupp testified Deputy Smith stated that the reckless driver reported by the 911 caller was probably Wisecarver. Chupp also testified to the proximity in time between Deputy Smith's initial call at 9:04 a.m. and the 911 call that occurred at 9:06–9:07 a.m.

Chupp acknowledged during cross-examination that the 911 caller did not identify the driver of the SUV as male or female; the year, make, or model of the SUV; or whether the SUV had temporary or regular license plates. Chupp explained that while the driver of the SUV reported by the 911 caller could have been anybody, any reckless driver, the close proximity in time between Deputy Smith's original call and the 911 call "correlate[d]" to the dispatch information, so she included the 911 call within the recordings pertinent to Wisecarver's case.

During closing argument, the State argued that when considering the recordings, the evidence suggested the reckless driver was Wisecarver. The defense challenged the State's evidence and claimed the reckless driver could have been Wisecarver, however, the 911 caller did not testify at trial or provide more details than the 911 call itself. The defense claimed the lack of specificity provided in the 911 call amounted to reasonable doubt.

### B.    *Standard of Review and Applicable Law*

We review the trial court's admission of evidence for abuse of discretion. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *Id*.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (citing TEX. R. EVID. 401). Relevant evidence is generally admissible. *See* TEX. R. EVID. 402; *Gonzalez*, 544 S.W.3d at 370. However, even if the evidence is relevant, a trial court may determine that it is inadmissible for other reasons, including exclusion under evidentiary Rule 403. *See* TEX. R. EVID. 403.

Specifically, under Rule 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id*. However,

> [t]he fact that an item of evidence shows the defendant in a negative light is not sufficient to justify its exclusion on Rule 403 grounds: Almost all evidence offered by the prosecution will be prejudicial to the defendant. Only evidence that is *unfairly* prejudicial should be excluded. Unfair prejudice is the tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one. If the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, the court should admit the evidence.

*Inthalangsy*, 634 S.W.3d at 758 (citations and internal quotations omitted).

When conducting a Rule 403 balancing test, the court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case, "these factors may well blend together in practice." *Id*. at 642.

"Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g). "[*O*]*nly* if the danger of unfair prejudice substantially outweigh[s] the probative value of [the evidence]" will we find that the trial court abused its discretion in admitting the evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

### B.    Analysis

#### 1.  Probative Force and State's Need for Evidence

In addition to discrediting Deputy Smith for reasons unrelated to this appeal, Wisecarver's defense centered on Wisecarver's mother's testimony that gave a different account of Deputy Smith's encounter with Wisecarver. Contrary to Deputy Smith's testimony that Wisecarver became angry and sped away when Deputy Smith told Wisecarver about the warrant for his arrest, Coffey painted the picture of a peaceful exchange between Deputy Smith and Wisecarver, Wisecarver driving away to work, and Deputy Smith simply returning to his patrol vehicle. Thus, the recordings, including the 911 call, were necessary to rebut Coffey's portrayal of the events leading to Wisecarver being charged with evading arrest or detention with a motor vehicle. The recordings were probative of the charged offense. The recordings when considered in their sequence, and then played and explained to the jury, together with the locations specified in the various recordings, were probative of Wisecarver fleeing from Deputy Smith. Moreover, the recordings also corroborate Deputy Smith's testimony that Wisecarver evaded arrest or detention after being made aware of the warrant for his arrest.

#### 2.  Tendency to Suggest a Decision on an Improper Basis or Confuse or Distract the Jury from the Main Issues at Trial

We cannot say the recordings, including the 911 call, likely distracted the jury or likely caused the jury to convict Wisecarver on any improper basis. While the reckless driver described

in the 911 call could have been someone other than Wisecarver, when considering how the 911 call related to the sequence, timing, and geographical locations provided in the dispatch recordings, the evidence was probative of the charged offense—whether Wisecarver evaded arrest or detention with a motor vehicle. Additionally, Chupp admitted the 911 caller could have been describing another reckless driver and not Wisecarver, and the defense emphasized this fact during closing argument.

Given all the evidence admitted at trial, including Deputy Smith's testimony, the recordings, Chupp's explanation of the evidence contained in State's Exhibit 3, and counsels' closing arguments wherein each addressed the 911 call, we conclude the jury was equipped to evaluate the probative force of the recordings, along with the remaining evidence, and give the recordings their due weight. *See Gigliobianco*, 210 S.W.3d at 641–42.

### 3. Time Spent Providing Evidence or Whether the Evidence is Repetitive of Other Evidence Already Admitted

As stated above, the State called Chupp as a rebuttal witness. Chupp's testimony and the playing of the recordings in State's Exhibit 3 took less than an hour during the two-day presentation of evidence in the guilt/innocence phase. State's Exhibit 4, the CAD sheet, provided a short, written narrative of the dispatch recordings and the 911 call. Other than explaining what State's Exhibit 4 consisted of and how it was created, no further time was spent on this exhibit. Therefore, the admission of the recordings did not consume an inordinate amount of time, and they were not cumulative of other evidence.

After considering the *Gigliobianco* factors, we find no "'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App.

2001)); *Gigliobianco*, 210 S.W.3d at 641–42. The trial court was within its discretion to admit the challenged recordings, including the 911 call. *See Inthalangsy*, 634 S.W.3d at 754.

We overrule Wisecarver's first issue and affirm the jury's finding Wisecarver guilty of evading arrest or detention with a motor vehicle.

### PUNISHMENT PHASE: NEWSPAPER ARTICLE EXCERPTS

In his second issue, Wisecarver complains the trial court erred by allowing the State's witness to read excerpts from a newspaper article about Wisecarver during the punishment phase of his trial. At trial and on appeal, Wisecarver argues the article's contents are inadmissible hearsay. On appeal, Wisecarver also complains the admission of the excerpts violated the Confrontation Clause. However, the record demonstrates that Wisecarver did not object at trial on Confrontation Clause grounds as explained below.

#### A.    *Waiver of Confrontation Clause Argument*

On appeal, Wisecarver attempts to complain that the trial court's admission of the newspaper article excerpts violated his right under the Sixth Amendment's Confrontation Clause to be confronted with the witnesses against him because the article's author was not present at trial. *See* U.S. CONST. amends. VI, XIV; *Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011).

To preserve error for appellate review, a party must make a timely and specific objection to apprise the trial court of its complaint. *See* TEX. R. APP. P. 33.1(a)(1). Doing so gives the trial court an opportunity to remedy any purported error. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). The Texas Court of Criminal Appeals has clearly held that a defendant must make a specific Confrontation Clause objection to preserve such error. *See Lucio v. State*, 351 S.W.3d 878, 909 (Tex. Crim. App. 2011) (concluding defendant's hearsay objections failed to alert trial court to any claim that State's evidence violated her Sixth Amendment right to confront

witnesses and thus failed to preserve such claims for appellate review); *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (holding Confrontation Clause claims are subject to preservation requirements under Texas Rule of Appellate Procedure 33.1(a)(1)(A)); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding defendant "failed to preserve error on Confrontation Clause grounds" by failing to assert objection at trial). "An objection on hearsay does not preserve error on Confrontation Clause grounds." *Reyna*, 168 S.W.3d at 179.

Here, during the bench conference when the parties discussed the admissibility of the evidence at issue, including Wisecarver's hearsay objection, Wisecarver added that "the statements made in the article that are not by [Wisecarver] – we still don't have the witness that wrote this to testify as to anything that was written, and so [defense counsel] think[s] it should be treated differently." The trial court ruled the newspaper article's contents could be read to the jury, but the article would not be admitted.

At no time did Wisecarver object on the basis that allowing the State's witness to read from the newspaper article violated his Confrontation Clause rights. Accordingly, Wisecarver failed to preserve his Confrontation Clause complaint, and we overrule that portion of his second issue. *See Reyna*, 168 S.W.3d at 179.

### C.      *Standard of Review*

We review a trial court's punishment phase rulings as to the admissibility of extraneous offense evidence under an abuse of discretion standard. *See Lamb v. State*, 186 S.W.3d 136, 141 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Roberts v. State*, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)). Evidence that may not have been admissible during the guilt-innocence phase may be admissible during the punishment phase if it is deemed relevant to sentencing. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Henderson v. State*, 29 S.W.3d 616, 626 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)). The trial court "is the

authority on the threshold issue of the admissibility of relevant evidence during the punishment phase." *Lamb*, 186 S.W.3d at 141. "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and we must uphold the ruling." *Id*. (citing *Roberts*, 29 S.W.3d at 600).

Article 37.07 of the Texas Code of Criminal Procedure provides that, during the punishment phase of trial,

> evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1); *accord Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).

If the reviewing court determines the trial court erred by admitting the evidence, the error is considered nonconstitutional error that requires reversal only if it affects the substantial rights of the accused. TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *see also* TEX. R. EVID. 103(a) (stating that trial court error admitting or excluding evidence must affect "a substantial right of the party"). A defendant's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In making this determination, the reviewing court "should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). The reviewing court "may

also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable," as well as "whether the State emphasized the error." *Motilla*, 78 S.W.3d at 355–56.

After examining the record, if we have a fair assurance that the error did not influence the jury, or had but a slight effect, we must conclude the defendant's substantial rights were not affected, and we must uphold the trial court's ruling. *See id*. at 355 (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

### D. Applicable Law for Admitting Hearsay Evidence

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement and is generally not admissible unless the statement falls within a recognized exception to the hearsay rule. TEX. R. EVID. 801(d), 802; *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). "Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008); *see also Estrada v. State*, 313 S.W.3d 274, 313 (Tex. Crim. App. 2010) ("[I]t is the responsibility of the proponent to inform the court of the existence of an exception to the hearsay rule.").

The State claims the newspaper article excerpts fall under the hearsay exception for statements in a learned treatise, periodical, or pamphlet. *See* TEX. R. EVID. 803(18). Rule 803(18) provides the following evidence is admissible hearsay, regardless of whether the declarant is available as a witness:

A statement contained in a treatise, periodical, or pamphlet if:

(A)     the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and

(B)     the publication is established as a reliable authority by the expert's admission or testimony, by another expert's testimony, or by judicial notice.

If admitted, the statement may be read into evidence but not received as an exhibit.

TEX. R. EVID. 803(18).

### E.     Facts Regarding the Newspaper Article

The newspaper article published in the "San Francisco Weekly" reported on an interview Wisecarver gave during his incarceration in California following his 2010 felony conviction for illegally dealing oxycontin. According to the State, the article includes multiple identifiers tying Wisecarver to the article. The State added that the newspaper article provides direct quotes from Wisecarver given in the interview, identifies Wisecarver as the "Oxy King of Marin County, Profile of a Prolific Drug Dealer -- or Prolific Dealer," shows Wisecarver had no remorse, and is relevant to the admission of the California penitentiary packet. Wisecarver objected to the article's admission on hearsay grounds.

As stated above, the State argued the excerpts were hearsay exceptions under Rule 803(18) as statements in a learned periodical. *See id.* The State explained that the newspaper article was admissible under "the periodical exception" "because [the article is] specifically about [Wisecarver's 2010 California] case" and not "just a normal article" about Wisecarver. Wisecarver continued to assert the newspaper article constituted hearsay.

The State called Todd Burdick as an expert witness to admit portions of the article. Burdick, an investigator with the 198th District Attorney's Office who testifies about defendants' criminal histories and prior bad acts, explained the contents of Wisecarver's penitentiary packet from California. The State inquired as to whether Burdick had testified as an expert previously about

defendants' criminal histories and prior bad acts, to which Burdick affirmed. Wisecarver did not object to the State's identification of Burdick as an expert.

After discussing Wisecarver's 2010 California conviction, as reflected in the penitentiary packet, the State sought to admit the newspaper article. Wisecarver again objected on hearsay grounds. He added the publication needed to be "established as [a] reliable authority by the expert's [ad]mission or testimony." In response, the State claimed the evidence was "inherently reliable[,]" because the State's expert, Burdick, expressed his opinion that the article is about Wisecarver, and therefore, the admission of the newspaper article meets the 803(18) exception. Specifically, the State contended that because the newspaper article concerns Wisecarver's 2010 California conviction, all the expert has to say to meet the 803(18) hearsay exception is, "'This is a reliable document based on my identification and my experience and knowledge and qualifications," thereby, making the article "inherently reliable." The trial court ruled that the State's witness could reference the article and read from it, but that it would neither be admitted nor published to the jury.

Thereafter, Burdick testified about the newspaper article to the jury, explaining the article was published in the "San Francisco Weekly," included Wisecarver's picture, and was titled, "The Oxy King of Marin County, A Prolific -- A Profile of a Prolific Dealer." Burdick stated the article provided a descriptive portrayal of a person desperate to find oxycontin to feed his addiction one night when he finds Wisecarver, who is then arrested and identified as one of the San Francisco Bay area's most notable oxycontin pill dealers of that time. Burdick read other excerpts that described Wisecarver's lavish lifestyle, referred to his mother, Coffey, and quoted Wisecarver stating that once released, he may "'go back to what he does: Dealing pills.'"

*F.     Analysis*

1.   Did the trial court err in admitting the evidence?

The 803(18) hearsay exception, commonly referred to as the "Learned Treatise" rule, may be used when a qualified expert relies on the treatise as a basis for the expert's opinion or is used during cross-examination to challenge an expert's opinions when the treatise has been recognized as authoritative by the expert or another expert in the case. *See* TEX. R. EVID. 803(18); *see also Ex parte Napper*, 322 S.W.3d 202, 247 & n.175 (Tex. Crim. App. 2010) (referring to the Rule 803(18) hearsay exception as the "Learned Treatises" exception).

"A learned treatise is only admissible in conjunction with testimony by an expert witness." *Godsey v. State*, 989 S.W.2d 482, 492 (Tex. App.—Waco 1999, pet. ref'd) (citing *Loven v. State*, 831 S.W.2d 387, 395 (Tex. App.—Amarillo 1992, no pet.)). Because the expert is able to assist the jury by explaining and applying the treatise, the expert's testimony avoids the risk that the jury might misunderstand or misapply the evidence from a treatise. *See id.* (citing *Loven*, 831 S.W.2d at 395). Furthermore, the rule itself only allows for the statement to be read into evidence and not admitted as an exhibit itself. *See* TEX. R. EVID. 803(18). This restriction prevents a jury from "rifling through a learned treatise and drawing improper inferences from technical language it might not be able to properly understand without expert guidance." *Loven*, 831 S.W.2d at 395 (internal citations and quotations omitted); *see also* TEX. R. EVID. 803(18).

Given the purpose of Rule 803(18), the State failed to lay the proper foundation for the trial court to admit the contents of the newspaper article. The State explained that because the article can be directly tied to Wisecarver and discusses his 2010 California felony conviction used to enhance his punishment here, the article is "inherently reliable" as Burdick testified. The State, however, misapplies Rule 803(18). Although the State called Burdick as an expert witness and he testified the newspaper article is "reliable authority," the article is not a learned treatise relied on

by Burdick to form his expert opinions. The State did not elicit any expert opinions from Burdick. Rather, the State's purpose for calling Burdick as an expert witness was to have him read portions of the article pertaining to Wisecarver's drug dealing, resulting lifestyle, 2010 conviction, and incarceration, including Wisecarver's quotes about the 2010 crime and his potential future.

We conclude the State failed to establish the newspaper article excerpts were from a learned treatise, periodical, or pamphlet considered as "reliable authority" as contemplated by Rule 803(18). *See* TEX. R. EVID. 803(18); *see also Godsey*, 989 S.W.2d at 492; *Loven*, 831 S.W.2d at 395. Therefore, the trial court abused its discretion in allowing Burdick to read excerpts from the newspaper article. *See Lamb*, 186 S.W.3d at 141; *Roberts*, 29 S.W.3d at 600.

### 2. Did Wisecarver suffer harm from the trial court's error?

Having determined the trial court erred in allowing the State's witness to read portions of the newspaper article, we must conduct a harm analysis. *See Motilla*, 78 S.W.3d at 355–56. Because the error occurred during the punishment phase, we must determine if the error affected Wisecarver's substantial rights as to the jury's sentencing recommendation and the trial court's subsequent assessment of Wisecarver's seventeen-year sentence. Wisecarver's sentence was based on the jury's first finding the State's enhancement allegation true and then recommending Wisecarver serve a seventeen-year prison sentence.

The State provided conclusive evidence of Wisecarver's 2010 felony conviction for illegally selling a controlled substance in California. Thus, the State provided sufficient proof of a prior final felony conviction, other than a state jail felony, that supports the second-degree felony enhancement, with punishment ranging from two years to twenty years. *See* TEX. PENAL CODE ANN. §§ 12.33, 12.42(a). Wisecarver's seventeen-year sentence falls within the permissible punishment range. *See id.* § 12.33.

Nonetheless, most of the evidence the State referred to in closing argument pertained to the newspaper article excerpts concerning Wisecarver's oxycontin-pill-peddling criminal behavior, his lavish lifestyle, and his mindset about selling drugs. The State did not focus on evidence concerning the 2020 evading arrest or detention with a motor vehicle charge or current evidence regarding Wisecarver's character. Rather, the newspaper article's contents provided significant details of Wisecarver's mindset surrounding his drug dealing of oxycontin before and during his incarceration for his 2010 conviction. The State emphasized these excerpts in its closing argument, including several quotes given by Wisecarver to the article's author. After mentioning the drug problem in Bandera County, the State reminded the jury about Wisecarver's comment about retiring from drug dealing but stating that it is difficult to have a "legitimate business these days," so he may "simply go back to what he does best: Dealing pills." The State then closed with Wisecarver's quote that Wisecarver "'think[s] about it every single day,'" that "'[i]t's all about winning, and I won.'"

Based on our review, we cannot say with fair assurance that the trial court's error in allowing the State's witness to read excerpts from the newspaper article did not influence the jury or have but a slight effect on the jury's recommendation and the trial court's assessment of Wisecarver's seventeen-year sentence. *Motilla*, 78 S.W.3d at 355. We conclude the error affected Wisecarver's substantial rights as to his punishment. *See* TEX. R. APP. P. 44.2(b). We sustain Wisecarver's second issue.

We reverse the trial court's judgment with respect to Wisecarver's assessed punishment and remand this proceeding to the trial court for a new punishment proceeding consistent with this opinion.

**CONCLUSION**

We affirm the trial court's judgment in part, and we reverse it in part. We remand the cause

to the trial court to conduct a new punishment proceeding consistent with this appeal.

Irene Rios, Justice

DO NOT PUBLISH